94 F.2d 652 (1938)
In re KASHMIR REFINISHING CO., Inc.
ZELBY
v.
KARSH.
No. 174.
Circuit Court of Appeals, Second Circuit.
February 7, 1938.
Herman G. Robbins, of Brooklyn, N. Y. (Samuel B. Pollak, of New York City, of counsel), for appellant-trustee.
Smyth & Smyth, Jr., of New York City (George Natanson and Walter J. Fried, both of New York City, of counsel), for appellee-mortgagee.
Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
On August 1, 1936, Kashmir Refinishing Company, Inc., executed and delivered a chattel mortgage to the appellee, Karsh, covering certain machinery and equipment of the company to secure payment of a loan of $3,000 and interest. Karsh made the loan to the company by two checks for $2,400 and $600, respectively, whereof $600 was immediately returned to the lender as a bonus. The loan was reduced by a payment of $500, so that there remained due $2,500 *653 and interest. On October 29, 1936, an involuntary petition in bankruptcy was filed against the company. Thereafter it was adjudged a bankrupt and the appellant, Nathan E. Zelby, was elected trustee and duly qualified as such. The bankruptcy court ordered the mortgaged property sold free and clear of liens and the net proceeds held pending the determination of the validity of the lien of Karsh which, if found valid, should attach to such proceeds. After the sale proceedings were taken to have the court declare the lien of the mortgage valid against the proceeds of sale and also to obtain payment of counsel fees amounting to $375 and of $60 paid for the premium on a bond furnished by the mortgagee in an action of replevin brought in the state court and of $10 sheriff's fees in that action. After a hearing before the referee and an appeal to the District Court, the latter made an order holding the lien of the mortgage valid as to the following items: (1) $2,500 of unpaid principal; (2) interest on $2,500 at the rate of 6 per cent. per annum from July 31, 1936, to the date of payment of said principal sum; (3) $375 for counsel fees; (4) $70 for necessary legal disbursements.
From the foregoing order by the District Court this appeal is taken.
The mortgage provides that, in the event the interest of the mortgagee or its right of possession should be transferred or attempted to be transferred or a judgment should be obtained against the mortgagor, the moneys secured by the mortgage should immediately become due and the mortgagee should be authorized "with or without legal process" to take exclusive possession of the mortgaged chattels and to sell them at public or private sale with or without notice.
On or about October 23, 1936, the sheriff made a levy on the mortgaged property by virtue of an execution issued upon a judgment against the mortgagor, and shortly after the levy the mortgagee brought an action of replevin in the state court to obtain possession of the chattels. In connection with this action $60 was paid by the mortgagee as a premium for the replevin bond and $10 as sheriff fees. The filing of the petition in bankruptcy on October 29 made it unnecessary to proceed further with the replevin action, and the chattels were sold by the bankruptcy court free and clear of the lien of the mortgage which, so far as valid, was to attach to the proceeds.
The mortgage provided that out of the moneys realized from the sale of the property there should be paid the loan and interest "and all charges and expense touching the same including counsel fees. * * *" It further provided that, if the mortgagee "retains counsel for the purpose of collecting any moneys which may be due under the mortgage, or to recover the mortgaged property or to protect his (its) interest therein * * * that then and in that event the party of the first part * * * agrees to pay counsel fee, the amount of which is hereby expressly fixed at a sum which shall be equal to 15% of the entire balance unpaid under this mortgage whether due or not, and such counsel fee shall be added to the indebtedness secured by this mortgage and shall and hereby is made part of the mortgage debt, and shall become an additional lien on said mortgaged chattels secured by this mortgage, and payable on demand with interest, anything in this mortgage to the contrary notwithstanding, said counsel fee is in no event to affect but is to be paid in addition to statutory court costs."
The trustee in bankruptcy insists that the $600 paid as a bonus to Karsh and the $375 allowed as a counsel fee and the expenses of $70 incurred in connection with the action of replevin should not have been allowed  in other words, he wishes to limit the mortgagee's recovery to the net advance of $2,400, less the $500 paid on account of the indebtedness, or to $1,900 and interest. He bases his contention largely upon section 67d of the Bankruptcy Act, as amended, 11 U.S. C.A. § 107(d), which reads as follows: "Liens given or accepted in good faith and not in contemplation of or in fraud upon the provisions of this act [title], and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act [anything herein]."
The mortgage was given within four months of the date of the filing of the petition in bankruptcy, and we may assume that the mortgagor was insolvent at that time. But there is no proof that this fact was known to the lender, who made some investigation and found that the mortgagor was then actively engaged in business, had a number of men at work, had considerable property on the premises, and was possessed *654 of valuable machinery in the boiler room not to be included in the mortgage. We find no proof showing that the mortgagee was arranging for a bonus in order to despoil the estate or to take an unlawful preference or that he stood in a position different from any other money lender to a hard-pressed corporation who, when making a loan at some risk, exacts all the traffic will bear. Under the New York law a corporation cannot lawfully avoid an agreement because it is usurious, nor was any defense established based on an attempt to defraud the Bankruptcy Act by obtaining a preference. As we said in Re Bernard & Katz, 2 Cir., 38 F.2d 40, 43: "Knowledge of the borrower's insolvency, if insolvency at the dates of the loans were to be assumed, and knowledge thereof imputed to the lender, would be entirely irrelevant to the present issue."
In the case at bar there was not even such knowledge. But, in the absence of proof of fraud upon the Bankruptcy Act, the balance of $2,500 allowed by the court below, as well as the counsel fees, were clearly recoverable. Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982; In re Bernard & Katz, 2 Cir., 38 F.2d 40; In re International Raw Material Corporation, 2 Cir., 22 F.2d 920, cited with approval in Manufacturers' Finance Co. v. McKey, supra; Boise v. Talcott, 2 Cir., 264 F. 61; Van Iderstine v. National Discount Co., 2 Cir., 174 F. 518.
We deem the foregoing decisions wholly decisive and conclusive of the result reached by the court below except as to the $70 fees paid in connection with the replevin action. These fees plainly do not come within the clause in the mortgage, which we have quoted at length, authorizing the allowance of a 15 per cent. counsel fee. They likewise do not come within the earlier clause we have mentioned providing for payment out of the moneys realized from a sale by the mortgagee of "all charges and expenses touching the same including counsel fees." The proceeds of the sale in the bankruptcy court which was opposed by the mortgagee were in no way derived through the replevin action. The words: "all charges and expenses touching the same" are narrowly limited and do not reach the items aggregating $70.
The order is modified so as to eliminate the $70 allowed by the District Court, but is otherwise affirmed. No costs are allowed.