**In the Matter of Jerry WOLMAN and
Anne Wolman, Debtors.**

**No. 13072.**

United States District Court,
D. Maryland.

July 14, 1970.

**704**

John H. Somerville, Thomas C. Beach, III, and Clapp, Somerville, Black & Honemann, Baltimore, Md., for American National Bank of Maryland.

Benton C. Tolley, Jr., of Washington, D. C., for National Presbyterian Church, Inc., and for Philip Herrick and Nicholas E. Allen, Trustees.

THOMSEN, District Judge.

In this Chapter XI case a junior lienor, American National Bank (the Bank), has filed a petition for review of an order of the Referee overruling the Bank's exceptions to the allowance of an attorney's fee as part of the lien of a senior lienor, National Presbyterian Church, Inc. (the Church), which has been permitted to foreclose and sell the property covered by the liens. The property comprises some 16 acres on Massachusetts and New Mexico Avenues in Washington, D. C., title to which was in the debtors, Jerry Wolman et ux.

At the time the debtors made application for a plan of arrangement under Chapter XI of the Bankruptcy Act, there were seven liens against the property, all secured by deeds of trust duly recorded among the Land Records of the District of Columbia. The total amount of all the liens was $7,640,000. The Church held a second trust of $2,487,000 and a fourth trust of $125,000;[1] it was secondarily liable under the first trust of $920,000. The Bank held the sixth and seventh trusts.

On January 31, 1968, shortly after the debtors had filed their application herein, the Church filed a petition seeking leave of Court to foreclose under one of its liens. On May 12, 1969, after protracted litigation and negotiations with respect to alternative proposals, the Referee authorized the Church to foreclose under its fourth deed of trust, to report the sale, and to render an accounting of the proceeds. The property was sold at public auction to the Bank for $500,000, subject to the indebtedness of $4,641,000 secured by the first three trusts. The sale was reported to the Referee, and the Trustees filed an accounting of the proceeds. The accounting showed that the sum of $20,000, representing the fee of Benton C. Tolley, Jr., attorney for the Church and for the Trustees, was being held in escrow.

The Bank excepted to the allowance of any fee, and argued that if a fee were allowed, it should be limited to a reasonable attorney's fee for services in connection with the sale. The Referee overruled the Bank's exceptions.

On petition for review the Bank concedes that $20,000 is a reasonable fee for all services rendered by Tolley to the Church herein, including its original petition and the subsequent litigation and negotiations leading to the order for foreclosure, but objects to the allowance of more than $4,000, the portion of the total fee attributable to Tolley's services "rendered in the actual foreclosure of the fourth deed of trust".

The Church relies particularly upon the following provisions in the fourth deed of trust:

1. The "Whereas" clause, which recites that Wolman et ux "desire to secure the full and punctual payment" of the debt and interest thereon; "also to secure the reimbursement to the holders of said note [the Church] and to [the Trustees] * * * for all money which may be advanced as herein provided for, and for any and all costs and expenses (including reasonable counsel fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this Trust, or to the indebtedness or to the property herein

---

1. Balance due on an original debt of $225,000.

mentioned, or in obtaining possession of the premises after any sale which may be made as hereinafter provided for".

2. Paragraph Second of the "Uses and Trusts", which provides in pertinent part: "Trustees shall be paid a commission based upon reasonable compensation for time actually spent plus reimbursement for expenses actually incurred."

Those provisions are customarily found in printed forms of deeds of trust in the District of Columbia since the decision in Manchester Gardens v. Great West Life Assur. Co., 92 U.S.App.D.C. 320, 205 F.2d 872 (1953), which upheld their validity.

The Bank argues that whether or not this deed of trust contains a valid provision for reimbursement, the provision for a reasonable attorney's fee cannot be so applied or extended as to prejudice the rights of the Bank, a subsequent lien holder. It further argues that the deed of trust was executed in Maryland; that Maryland law controls; that the Bank, as a subsequent encumbrancer "had no notice of the amount relative to these fees", that the amount of the expenses was not reasonably ascertainable by an inspection of the land records and did not accrue until after the Bank's lien attached; that under Art. 66, sec. 2 of the Maryland Code (1968 Repl. Vol.),[2] the fee was a future advance; and that the agreement to extend the security to include the fee must fail as to the Bank.

Whether or not the Bank's argument would be valid if Maryland law controlled,[3] it cannot prevail in this case, because Maryland law does not control. It is true that the fourth deed of trust was executed and acknowledged by the Wolmans in Maryland, but the reasonable inference is that it was delivered in the District of Columbia, and the record shows that it was recorded among the Land Records of the District of Columbia, where the property is located, and where it had to be recorded to make it a valid lien on the property.

Under these circumstances, and whether the deed of trust was physically delivered in Maryland or the District of Columbia, this Court is satisfied that with respect to the validity and extent of the lien as against subsequent lienors or grantees, both the Maryland Courts and the District of Columbia Courts would hold that District of Columbia law controls. Indeed, even if a Maryland Court should decide to apply Maryland law, it would probably hold that the provision in question is not controlled by Art. 66, sec. 2, but would apply the general rule, as stated in the *Manchester Gardens* case, where the Court said:

"It appears then that plaintiff is liable for defendant's attorney's fees under the provisions of the deed of trust, unless these provisions are for some reason unenforceable in whole or in part. There can be no doubt of

---

2. "No mortgage or deed in the nature of a mortgage shall be a lien or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage and be specified and recited therein, and particularly mentioned and expressed to be secured thereby at the time of executing the same; and, except as is hereinafter provided, no mortgage or deed in the nature of a mortgage shall be a lien or charge for any sum or sums of money to be loaned or advanced after the same is executed, except from the time said loan or advance shall be actually made * * *."

3. The Bank cites many Maryland cases on the question whether a deed of trust should be considered a mortgage and covered by Art. 66, sec. 2, including Manor Coal Co. v. Beckman, 151 Md. 102, 133 A. 893 (1926); Lebrun v. Prosise, 197 Md. 466, 79 A.2d 543 (1951); Rupp v. M. S. Johnston Co., 226 Md. 181, 172 A.2d 875 (1961); Frank M. Ewing Co. v. Krafft Co., 222 Md. 21, 158 A.2d 654 (1960); Brown v. Hardcastle, 63 Md. 484 (1885). These cases dealt with true future advances and did not consider facts similar to those under consideration here.

the general validity of such provisions in most jurisdictions, at least so long as they do not require more than indemnification of the lender for attorney's fees reasonably and actually incurred in connection with the debt. We are prepared to adopt that general rule." 205 F.2d at 877, 878.

See Brenner v. Plitt, 182 Md. 348, 366, 34 A.2d 853 (1943); Bowie v. Hall, 69 Md. 443, 16 A. 64 (1888).

With respect to the bankruptcy aspect of the problem, the controlling law is stated in Security Mortgage Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928), where the Court, speaking through Justice Brandeis, said:

" * * * The validity of the lien claimed by the Mortgage Company for attorney's fees must be determined by the law of Georgia; for the contract was there made and was secured by real estate there situate. Humphrey v. Tatman, 198 U.S. 91, [25 S.Ct. 567, 49 L.Ed. 956]. See Benedict v. Ratner, 268 U.S. 353, 359 [45 S.Ct. 566, 69 L.Ed. 991]. The construction of the contract for attorney's fees presents, likewise, a question of local law. See Farmers' [& Merchants'] Bank v. Fed. Reserve Bank, 262 U.S. 649, 660 [43 S.Ct. 651, 67 L.Ed. 1157]. Whether the liability is, under the circumstances, enforceable against the proceeds of the sale raises federal questions peculiar to the law of bankruptcy. The character of the obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property." 278 U.S. at 153, 154, 49 S.Ct. 84, 85.

■ The fact that most or all of the services were rendered after the application for a plan of arrangement was filed by the debtors does not preclude the allowance of such fees as a part of the lien, on the ground that the lien would not be upon a "present consideration" at the time of the filing of the bankruptcy petition, within the meaning of the Bankruptcy Act. As the Court said in Security Mortgage Co. v. Powers, supra:

" * * * [T]he mortgage company does not seek to prove the claim [for attorney's fees] in bankruptcy. It asks to have it allowed as a part of the principal debt, which is secured by a lien upon the property sold. The federal courts for Georgia have, in a series of cases, refused to permit this to be done, on the ground that the liability was contingent at the time of the adjudication. * * * We find nothing in the Bankruptcy Act to justify such a refusal. The lien was not inchoate at the time of the adjudication. It had already become perfect when the principal note and the loan deed securing it were given. Property subject to a lien to secure a liability still contingent at the time of bankruptcy is not discharged from the lien by the adjudication. The secured obligation survives; and if it is that of a third person is usually unaffected by the bankruptcy. When by the happening of the event the contingent liability becomes absolute, the lien becomes enforceable though this occurs after the adjudication.

" * * * The trustee contends that allowance of the credit is barred by § 67d, because the liability for attorney's fees not having become absolute until after the adjudication, is excluded by the provision which allows outstanding liens 'to the extent of such present consideration only'. The contention has support in In re Mobile Chair Co., 245 Fed. 211. But it was rejected, and we think properly, in In re Rosenblatt, 299 Fed. 771. The contingent obligation to pay attorney's fees was a part of the original transaction. The consideration for the lien was not the attorney's services, but the $90,000 advanced by the Mortgage Company; and this was a present consideration. See Bank of

Lumpkin v. Farmers Bank, 35 Ga.App. 340 [133 S.E. 307]." 278 U.S. at 155–156, 49 S.Ct. 84 at 86–87.

See also Annotation in 161 A.L.R. 968–983.

Since the deed of trust in our case clearly provided for the payment of attorney's fees as part of the consideration for the loan, the Bank had notice that such fees would be collected in the event of a default.

The Bank "objects to that part of the total $20,000 fee [approximately $16,-000] which represents a charge for services rendered with regard to at least one unsuccessful attempt of the Church to secure permission to foreclose the lien of another deed of trust (the second) and with regard to litigation concerning matters wholly unrelated to the foreclosure of the fourth deed of trust". It appears, however, that there were prolonged negotiations and hearings with respect to the question—under which of the seven deeds of trust the foreclosure sale should be held. The final decision was that the sale should be held under the fourth deed of trust.

All of Tolley's services for which his fees are claimed as "expenses" by the Church are included within the language of the "Whereas" clause of the fourth deed of trust in that they were "expenses (including reasonable counsel fees) incurred or paid on account of any litigation * * * which may arise in respect * * * to the property * * *" secured by that deed of trust. Brown v. Security National Bank of Greensboro, 200 F.2d 405, 407 (4 Cir. 1952). Cf. In Re Ebert, 140 F.Supp. 597, 600 (D.Del. 1956). The Bank does not deny that a fee of $20,000 was reasonable for all the services rendered.

The decision of the Referee allowing the fee in the amount of $20,000 is hereby affirmed.